**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| KOLA ADEGOKE,<br><br>       Plaintiff,<br><br>  v.<br><br>USCIS, et al.,<br><br>       Defendants. | Civil Action No. 25-14184-RMB-EAP<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**

**THIS MATTER** comes before the Court upon *pro se* Plaintiff Kola Adegoke's request to reopen this case, grant his application to proceed *in forma pauperis* ("IFP"), and docket the Complaint.[1]  [Docket Nos. 5–6.]  Adegoke alleges that Defendants United States Citizenship and Immigration Services ("USCIS"), Ur M. Jaddou,[2] as Director of USCIS, and Kristi Noem, as Secretary of the Department of Homeland Security, violated the Administrative Procedure Act ("APA") when they denied his immigration petition for an EB-1A, or extraordinary ability, visa.  *See* [Docket No. 1 ("Compl.").]  For the reasons that follow, the Court will grant Adegoke's requests and direct the Clerk of the Court to docket the Complaint and issue summonses forthright.

---

[1] The Court previously withdrew the Complaint because Plaintiff did not file an IFP application or pay the filing fee upon instruction from the Clerk of the Court.  [Docket Nos. 3–4.]

[2] Joseph B. Edlow assumed the directorship of USCIS on July 18, 2025.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Edlow should be substituted for Ms. Jaddou's stead as the proper defendant in this case.

### I.    IFP SCREENING

When a person files a complaint and is granted IFP status, 28 U.S.C. § 1915(e)(2)(B) requires courts to screen complaints and dismiss those that are: (1) frivolous or malicious; (2) fail to state a claim upon which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief.  The IFP screening standard is the same as that for dismissal under Federal Rule of Civil Procedure 12(b)(6).  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012).  And as such, the Complaint is entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 556.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

Adegoke is a noncitizen F-1 visa holder residing in Galloway, New Jersey.  [Compl., at 4.]  As "a public health informatics professional", his "work bridges advanced informatics, digital health pedagogy, and operational health outcomes." [*Id.*]  Adegoke is currently a lead research assistant in public health at New York Medical College, "where he mentors graduate students, develops learning modules on public health equity, and supports IRB-approved research." [*Id.* at 3–4.]

On March 24, 2025, Adegoke submitted a I-140 form to obtain an EB-1A visa. [*Id.* at 5.]  After Adegoke timely complied with USCIS's request for evidence, USCIS "denied" Adegoke's petition on May 13, 2025. [*Id.*]  USCIS's allegedly delayed notice of denial

"impair[ed]" Adegoke's "ability to file a timely appeal or motion to reopen" at the administrative level.[3]  [*Id.*]

On August 5, 2025, Adegoke filed suit against Defendants, suing Director Jaddou and Secretary Noem in their official capacities, arguing that USCIS's denial "failed to consider probative evidence, relied on inaccurate factual assertions, applied improper legal standards, and terminated review without completing the required regulatory analysis"—in other words, USCIS's arbitrary and capricious visa decision violated the APA.  [*Id.*]  Adegoke seeks an order vacating that denial and directing USCIS to reconsider his petition for lawful adjudication.  [*Id.* at 4.]

On March 6, 2026, the Court ordered Adegoke to show cause on why the doctrine of consular nonreviewability does not bar judicial review of the visa denial as outlined in the Complaint.  [Docket No. 7.]  Adegoke timely complied, advising the Court that the consular nonreviewability doctrine applies to visa decisions made by consular officials located *outside* the United States, such as at a foreign embassy or consulate.  *See* [Docket No. 8.]  After review, the Court is inclined to agree at this time.  *Compare, e.g.*, *Chitsazan v. Allen*, No. 24-9112, 2025 WL 2779173, at *1 (D.N.J. Sept. 30, 2025) (shielding visa decision by United States Embassy in Armenia because of consular nonreviewability doctrine); *Moralez v. Blinken*, No. 1:21-CV-05726, 2021 WL 5356081, at *1 (D.N.J. Nov. 17, 2021) (same for visa decision rendered by

---

[3] If a petition is denied, an applicant may either appeal or move to reopen the petition.  8 C.F.R. §§ 103.3, 103.5.  Relevant here, the APA authorizes a court to review only "final" agency actions.  5 U.S.C. § 704.  An agency decision is not final if the agency by statute or rule requires an administrative appeal.  But if an administrative appeal is optional, a party is not required to employ that step before seeking relief under the APA.  *See Darby v. Cisneros*, 509 U.S. 137, 146 (1993).  The Court is presently of the understanding that there is no statute or regulation requiring a petitioner to seek review by the Administrative Appeals Office following USCIS's denial of an I-140 petition, and therefore a petitioner is not required to appeal to the AAO before seeking relief under the APA.  *See Branski v. Seng*, No. 24-CV-360, 2024 WL 4678939, at *2 (E.D. Wis. Nov. 4, 2024) (citing *Amin v. Mayorkas*, 24 F.4th 383, 390 (5th Cir. 2022)).

United States Embassy in Nicaragua), *with Branski*, 2024 WL 4678939, at *2  (permitting review of visa decision made by USCIS's Texas Service Center); *Nelson v. U.S. Citizenship & Immigr. Servs.*, No. CV 21-10334-LTS, 2022 WL 20583561, at *1–*3 (D. Mass. June 15, 2022) (same for other domestic decision); *cf. also Chen v. Rice*, No. 07-4462, 2008 WL 2944878, at *7 n.16 (E.D. Pa. July 28, 2008) (emphasis added) ("[T]he court questions the applicability of the heavily criticized doctrine of consular nonreviewability to eligibility and other statutorily defined determinations, *particularly where the court could review the exact same determination if made by a DHS official inside the United States*.").  Satisfied that the consular nonreviewability doctrine does not block judicial review of the stateside visa denial at issue, at least at this time without the benefit of adversarial briefing, the Court also finds that Adegoke currently plausibly states a claim under the APA for the reasons below.

## III.    ANALYSIS

The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, *et seq.*, allows the State Department to issue immigration visas to individuals based on different classifications, including employment-based classifications.  *See id.* § 1153(b).  One such category of visa, the EB-1A, is available to individuals of "extraordinary ability in the sciences, arts, education, business, or athletics through sustained national or international acclaim."  *Id.* § 1153(b)(1)(A).  Sometimes referred to as the "Einstein" or "genius" visa, *see Amin v. Mayorkas*, 24 F.4th 383, 386–87 (5th Cir. 2022), the EB-1A visa is considered a "priority" immigrant visa reserved for individuals at "the very top of [their] field," 8 C.F.R. § 204.5(h)(2), who seek "to enter the United States to continue work in [their] area of extraordinary ability," 8 U.S.C. § 1153(b)(1)(A)(ii).

4

To obtain an EB-1A visa, a petitioner must first file a Form I-140 with USCIS and provide evidence that they have "sustained national or international acclaim and that [their] achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(3). USCIS employs a two-step approach to adjudicating petitions for "extraordinary ability" visa classification under the INA. First, USCIS determines whether the initial evidentiary threshold is met. This evidence can include "a one-time achievement (that is, a major, international recognized award)"—such as an Olympic gold medal or Nobel Prize, *Amin*, 24 F.4th at 387—or can otherwise be satisfied by an applicant meeting at least three of ten criteria enumerated in the applicable regulations.[4]  *See* 8 C.F.R. § 204.5(h)(3). Once this initial

---

[4] These ten criteria are:

(i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

evidentiary threshold is met, USCIS at step two then conducts a "final merits determination," weighing the evidence submitted to determine whether it demonstrates extraordinary ability. *See Biyani v. U.S. Citizenship & Immigr. Servs.*, No. 4:22CV3032, 2022 WL 17326211, at *5 (D. Neb. Nov. 29, 2022) (collecting cases). "[A] reviewing officer may determine that a petitioner has satisfied three of the 204.5(h)(3) criteria, yet may nonetheless determine that the petitioner failed the final merits determination and thus does not qualify." *Id.* (quoting *Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 539 (S.D.N.Y. 2012)).

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action," as Adegoke alleges here, is "entitled to judicial review thereof."[5]  5 U.S.C. § 702.  The APA, moreover, provides the governing standard of review, pursuant to which a "reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2). Under the "deferential" arbitrary-and-capricious standard, "a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 180 (2025) (citation omitted).  Examples of arbitrary conduct occur when "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the

---

> (x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3).

[5] The APA operates as a limited waiver of sovereignty immunity permitting suit against USCIS and Director Jaddou and Secretary Noem in their official capacities. *See Gentile v. Sec. & Exch. Comm'n*, 974 F.3d 311, 313 (3d Cir. 2020); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.").

problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 44 (1983).

At step one, Adegoke alleges that USCIS arbitrarily and capriciously rejected the following third criteria, thus preventing the step two "final merits determination" and resulting in denial:

(1) rejecting the "authorship of scholarly articles" criterion by incorrectly attributing authorship of a book to Adegoke that he neither authored nor cited;

(2) rejecting the "published material about the petitioner" criterion by erroneously identifying The Nation Newspaper as Indian rather than Nigerian, disregarding Adegoke's submitted metrics confirming its national prominence and circulation in Nigeria, the United States, and the United Kingdom;

(3) rejecting "leading or critical role" criterion by ignoring Adegoke's scholarly posters published on F1000Research—each with a DOI and indexed—without evaluating their academic value;

(4) rejecting the "membership in associations requiring outstanding achievement" criterion by not considering Adegoke's credentialed, peer review-awarded fellowship in the American College of Healthcare Executives; and

(5) dismissing Adegoke's Preprints.org publications without analyzing their structure, citation, or indexing.

[Compl., at 6–7.] Accepting these allegations as true and casting them in a liberal, favorable light, *see Evancho v. Fisher*, 423 F.3d 347, 350–51 (3d Cir. 2005), Adegoke, at this stage in the proceeding, has plausibly alleged that USCIS "fail[ed] to consider relevant factors or provide an adequate explanation," which "are indeed among the 'wide range of reasons why agency action may be judicially branded as 'arbitrary and capricious,'" *Comite' De Apoyo A Los*

*Trabajadores Agricolas v. Perez*, 774 F.3d 173, 190 (3d Cir. 2014) (quoting *FEC v. Rose*, 806 F.2d 1081, 1088 (D.C. Cir. 1986)).  All the more so because the administrative record is not before the Court at this time, nor must it be.  *See Hamal v. U.S. Dep't of Homeland Sec.*, No. CV 19-2534 (RC), 2020 WL 2934954, at *4 (D.D.C. June 3, 2020) (quoting Fed. R. Civ. P. 8(a)(2)) ("But without fully reviewing the entire administrative record, it would be premature to declare that the agency acted reasonably.  At this early stage, Plaintiff is only required to plead 'a short and plain statement of the claim' ….").  Keeping in mind the absence of Defendants' positions to consider, the Court finds that Adegoke plausibly alleges a violation of the APA at this time.

## IV.    CONCLUSION

For the foregoing reasons, the Court will **GRANT** Plaintiff Kola Adegoke's Motion to Reopen Case [Docket No. 6] and IFP Application [Docket No. 5].  Consequently, the Court will **ORDER** the Clerk of the Court to file Plaintiff's Complaint [Docket No. 1], substitute Joseph B. Edlow for Ur M. Jaddou as the proper defendant pursuant to Federal Rule of Civil Procedure 12(d)(1), and initiate service upon Defendants in accordance with known IFP procedures.  An appropriate Order shall issue.

**March 18, 2026**
Date

/s/ **Renée Marie Bumb**
Renée Marie Bumb
Chief United States District Judge

8